IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

**LUIS D. GONZÁLEZ-GALBÁN,**

Plaintiff,

v.

**FRANK BISIGNANO,**
Commissioner of the Social Security Administration

Defendant.

Civil No. 25-1122 (MBA)

**OPINION AND ORDER**

    Luis D. González-Galbán (hereinafter "González" or "Plaintiff"), seeks review of the final administrative decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his claim for disability benefits under the Social Security Act ("the Act"), 42 U.S.C. § 423. González requests that the Commissioner's decision be reversed and he be declared disabled or, alternatively, that the case be remanded for further administrative proceedings. (ECF No. 1, 14). The Commissioner opposes, arguing that Plaintiff waived his arguments by failing to develop them and that the decision should be affirmed because it is based on substantial evidence and free of harmful legal error. (ECF No. 17).

    After careful consideration of the record, and for the reasons outlined below, the Commissioner's decision is **AFFIRMED**.

**APPLICABLE LEGAL FRAMEWORK**

    After reviewing the pleadings and record transcript, the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42

1

U.S.C. § 405(g). The court's review is limited to determining whether the Commissioner and his delegates employed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Sec'y of Health & Hum. Services*, 76 F.3d 15, 16 (1st Cir. 1996). The Commissioner's "findings of fact are conclusive when supported by substantial evidence, 42 U.S.C.§ 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (citing *Da Rosa v. Secretary*, 803 F.2d 24, 26 (1st Cir. 1986) (*per curiam*); *Ortiz v. Sec'y of Health & Hum. Services*, 955 F.2d 765, 769 (1st Cir. 1991)). Substantial evidence means "'more than a mere scintilla.' . . . It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal citation omitted). The court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Hum. Services*, 819 F.2d 1, 3 (1st Cir. 1987) (citing *Lizotte v. Sec'y of Health and Hum. Servs.*, 654 F.2d 127, 128 (1st Cir. 1981)).

To be eligible for social security benefits, a claimant must demonstrate that he or she is "disabled" within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The Act defines disability in pertinent part as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The impairment or impairments must be severe enough that "he [or she] is not only unable to do his [or her] previous work but cannot . . . engage in any other kind of substantial gainful work which exists [in significant numbers] in the national economy…." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1520(a).

The Commissioner follows a five-step evaluation process to determine disability. *Mills v. Apfel*, 244 F.3d 1, 2 (1st Cir. 2001); 20 C.F.R. § 404.1520(a). These steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. 20 C.F.R § 404.1520(a)(4). The Plaintiff has the burden of proof with respect to the first four steps of the process. *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001).

At Step One, the Commissioner determines whether the claimant is currently engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). At Step Two, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the disability claim is denied. At Step Three, the Commissioner must decide whether the claimant's impairment, considered singly and in combination with any other impairments, is equivalent to a specific list of impairments contained in the regulations' Appendix 1 (the "Listings"), which the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets or equals one of the listed impairments, he or she is conclusively presumed to be disabled. *Id.* If not, the evaluation proceeds to Step Four, through which the Administrative Law Judge ("ALJ") assesses the claimant's residual functional capacity ("RFC") and determines whether the impairment(s) prevent the claimant from doing the work he or she has performed in the past. 20 C.F.R. § 404.1520(e-f).

An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1). If the claimant can perform his or her previous work, he or she is not disabled. 20 C.F.R. § 404.1520(e). If he or she cannot perform this work, the fifth and final Step asks whether the claimant can perform other work available in the national economy in view of her RFC, as well as age, education, and work experience. If the claimant cannot, then he or she is entitled to disability benefits. 20 C.F.R. § 404.1520(f).

At Steps One through Four, the claimant has the burden of proving he or she "cannot return to [the] former employment because of [the] alleged disability." *Santiago v. Sec'y of Health & Hum. Servs.*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has done this, the Commissioner has the burden under Step Five to prove the existence of other jobs in the national economy the claimant can perform. *Ortiz v. Sec'y of Health & Hum. Servs.*, 890 F.2d 520, 524 (1st Cir. 1989) (citing 20 C.F.R. § 404.1520(f)). Additionally, to be eligible for disability benefits, the claimant must demonstrate that the disability existed prior to the expiration of their insured status. *Cruz Rivera v. Sec'y of Health & Hum. Servs.*, 818 F.2d 96, 97 (1st Cir. 1986).

**BACKGROUND**[1]

González originally applied for disability insurance benefits on May 20, 2022, alleging his disability began on March 26, 2021. (Tr. 688-94). The claim was initially denied on September 6, 2022, and on reconsideration on January 19, 2023. (Tr. 525-44).

On July 20, 2023, ALJ Luciannete Planas del Valle held a hearing. (Tr. 38). Shortly thereafter, on September 13, 2023, the ALJ notified an unfavorable decision. (Tr. 9-14). The Appeals Council denied González's request for review on January 3, 2025, finding no reason under their rules to review the ALJ's decision. (Tr. 1-3). The ALJ's written decision is briefly summarized below. (Tr. 15-30).

The ALJ determined at Step One of the five-step sequential process that González did not engage in substantial gainful activity since the alleged onset date, that is, May 26, 2021. (Tr. 17). At Step Two, the ALJ found that González had the following severe impairments: inflammatory polyarthritis, sacroiliitis, major depressive disorder, and generalized anxiety disorder. (*Id.*).

Analyzing Step Three, the ALJ concluded that González did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ first found that the record did not establish that González's joint impairments met or medically equaled listing 1.18. (*Id.*). There was "no evidence in the record of a medical need for a mobility assisting device for the upper or lower extremities" and González can use all extremities. (*Id.*). As observed by the ALJ, "[t]his finding was consistent with" González's own allegations and "the consultative examiner's physical evaluation." (*Id.*).

With respect to González's mental impairments, the ALJ determined that they did not meet or medically equal the criteria of Listings 12.04 and 12.06, considered singly and in combination. (Tr. 18). In so finding, the ALJ considered the "Paragraph B" criteria. To satisfy "Paragraph B" criteria,

---

[1] The facts in this section are drawn from the transcript ("Tr.") of the record of proceedings. (ECF No. 6).

the mental impairment must result in one extreme limitation[2] or two marked limitations[3] in a broad area of functioning. (*Id.*). These areas include a claimant's ability to "understand, remember, or apply information," "interact with others," "concentrate, persist, or maintain pace," and "adapt or manage oneself." Listings 12.04(B) (citing Listings 12.04(E-F)). The ALJ assessed mild to moderate limitations in all relevant areas. (Tr. 18-19).

First, as to understanding, remembering, or applying information, González testified that he had diminished memory. (Tr. 18). For example, he testified he needs reminders for self-care and to take medications. (*Id.*). However, he also asserted that he was able to manage his finances and follow written instructions. (*Id.*). And objective medical examinations on record also found González to have "intact or adequate memory," which led the ALJ to find González has a moderate limitation. (*Id.*).

Second, with respect to interacting with others, while the record documents symptoms of irritability and diminished social abilities, referencing evidence on record, the ALJ underscored that González "has no problem getting along with others" and that "his treating psychiatrists often found him to be cooperative." (Tr. 18). The ALJ therefore found only a mild limitation. (Tr. 18).

Third, as to González's ability to concentrate, persist, or maintain pace, the ALJ found he had moderate limitations. (Tr. 18). González testified that he has diminished concentration, but "objective examinations often found him [to have] adequate memory and concentration." (*Id.*).

Lastly, in the area of adapting or managing oneself, a moderate limitation was assessed given that González testified to diminished self-care and activities of daily living due to lack of encouragement and mood. (Tr. 19). Nevertheless, González admitted being able to manage his savings account, count money, and follow written instructions. (*Id.*). Moreover, the record often documented González as having a normal or tranquil mood and González was described in his psychiatric progress notes as being adequately dressed. (*Id.*).

Based on the above-outlined findings, the ALJ concluded that González's mental impairments

---

[2] An extreme limitation is the inability to function "independently, appropriately, effectively, and on a sustained basis." Listings 12.00(F)(2)(e).

[3] A marked limitation is a "seriously limited ability" to function "independently, appropriately, effectively, and on a sustained basis." Listings 12.00(F)(2)(d).

did not cause at least two "marked" limitations or one "extreme" limitation, and thus "Paragraph B" was not satisfied. (Tr. 19). The ALJ likewise considered if the "Paragraph C" criteria was satisfied, but the evidence fell short of establishing said criteria. (*Id.*). The ALJ highlighted records of "normal mental examination results" and González's noted "significant improvement." (*Id.*).

Next, and prior to moving to Step Four of the sequential process, the ALJ concluded that González had an RFC:

> to perform light work as defined in 20 CFR 404.1567(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; sitting for six hours, standing and/or walking for six hours. The claimant can push and pull as much weight as he can lift and carry. The claimant can climb ramps and stairs frequently, climb ladders, ropes, or scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch occasionally, and crawl occasionally. The claimant retains the capacity to understand, remember and carryout simple instructions. He can never perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas. He can occasionally use judgment limited to perform simple work-related decisions and is limited to never deal with changes in a routine work setting. The claimant [c]an occasionally interact with supervisors and coworkers, but never with the public.

(Tr. 19). In reaching this conclusion, the ALJ indicated that she considered all of González's symptoms to the extent they are consistent with the objective medical evidence as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3, as well as medical opinions and prior administrative findings as mandated by 20 C.F.R. § 404.1520c. (Tr. 19-20).

In following the required two-step process (first determining if the physical or mental impairments could reasonably be expected to produce the pain and/or symptoms alleged, and, second, evaluating the intensity, persistence, and limiting effects of said symptoms to determine the extent to which they limit Plaintiff's work-related activities), the ALJ concluded after a thorough and detailed explanation, (Tr. 20-23), that González's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 20). However, while the ALJ found González's physical and mental disorders to be severe, she also found them not to be disabling. (Tr. 22). The objective medical evidence and medical opinions that form part of the record along with González's testimony,

the ALJ found, included no marked limitations secondary to González's physical and mental disorders and only moderate impairments were proven as of the alleged onset date. (*Id.*).

The ALJ did find in her Step Four analysis that González was unable to perform any past relevant work. (Tr. 23-24). But considering his age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that he could perform such as Router, Laundry Worker, and Photoyping Machine Operator. (Tr. 24-25). The ALJ thus addresses the Step Five analysis as well. Accordingly, the ALJ held that González was not disabled under the Act. (Tr. 25).

On September 29, 2023, González sought review of the ALJ's decision before the Appeals Council. (Tr. 677-79). On January 3, 2025, the Appeals Council denied his request for review. (Tr. 1-8). On that date, the ALJ's decision became the Commissioner's final decision.

On February 28, 2025, González filed his social security complaint before this Court. (ECF No. 1). On April 17, 2025, the social security transcript was filed on the docket. (ECF No. 6). Upon consent provided by the parties (ECF Nos. 1, 9) on May 21, 2025, this case was formally referred to the undersigned Magistrate Judge for all further proceedings including the entry of judgment. (ECF Nos. 9, 10). González's social security brief was filed on July 9, 2025, (ECF No. 14), and the Commissioner's on July 21, 2025. (ECF No. 17). González did not file a reply to the Commissioner's response.

## DISCUSSION

González raises two claims of error in his attempt to obtain reversal of the ALJ's decision. First, that the ALJ erred at Step Three of the evaluation by concluding that González's mental impairments did not meet medical listing 12.04.[4] (ECF No. 14 at 2). And second, that the ALJ erred by not complying with the psychiatric review technique ("PRT") and SSR 96-8 at Step Three of the evaluation and at the RFC assessment. (*Id.* at 2-3). As to the first issue, González generally contends that the ALJ wrongly determined that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart

---

[4] González does not challenge the ALJ's conclusions as to his physical impairments.

P, Appendix 1. (ECF No. 14 at 10-11). In his second claim of error, González take exception with the ALJ's Step Three evaluation and RFC assessment, arguing it is "deficient as a matter of law as it did not follow PRT and SSR 96-8." (ECF No. 14 at 14). Each argument is addressed below.

### A. Medical Listing 12.04

González argues that the ALJ wrongly determined that the severity of his major depressive disorder did not meet or medically equal the criteria of medical listing 12.04. (ECF No. 14 at 12). As stated above, at Step Three González was required to show that his medical conditions met or medically equaled one of the listed impairments in Appendix 1 of the regulations and met the duration requirement. Listings; 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525(c)(3); *Torres v. Sec'y of Health & Hum. Servs.*, 870 F.2d 742, 745 (1st Cir. 1989) ("[I]t is the claimant's burden to show that he has an impairment or impairments which meets or equals a listed impairment in Appendix 1.") (citing *Dudley v. Sec'y of Health & Hum. Servs.*, 816 F.2d 792, 793 (1st Cir. 1987)). González mentions in the Argument section of his brief that the ALJ wrongly determined his impairments did not meet or medically equal Listings 1.15, 1.16, 1.18, and 12.04. (ECF No. 14 at 11). In fact, the ALJ addressed Listings 1.18, 12.04, and 12.06 in her decision, (Tr. 18-19), but as González solely requests reversal due to the alleged error in the ALJ's 12.04 analysis, (ECF No. 14 at 12), the Court will limit its discussion accordingly.

Medical listing 12.04 encompasses depressive, bipolar, and related disorders and is satisfied when the plaintiff demonstrates (A) medical documentation of (1) five of the listed characteristics of depressive disorder **or** (2) three of the listed characteristics of bipolar disorder; **and** (B) an extreme limitation of one **or** a marked limitation of two general areas of mental functioning. Listings § 12.04. Alternatively, it can be satisfied by demonstrating (A) **and** (C), "a medically documented history of the existence of the disorder over a period of at least two years" with evidence of both ongoing treatment that "diminishes the symptoms and signs of the mental disorder" **and** "marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life." *Id.*

In his argument, González first claims that the medical evidence in the record shows that he meets the requirements of "**medical listing 12.04A(2)(A and G) and marked limitations in Subsections B(3 and 4).**" (ECF No. 14 at 13, emphasis in original). However, medical listing

12.04(A)(2) refers to bipolar disorder, which González does not claim to have, and which is not supported by any medical evidence in the record. Even if the Court is to assume that González has erred and meant to refer to 12.04(A)(1), González fails to state specifically how the ALJ erred or how his conditions satisfy the requirements of 12.04. As such, González waives this argument by failing to develop it. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

González next argues that he meets the criteria for listing 12.04 (A) and (C). (ECF No. 14 at 13-14). However, once again González does not develop the argument, relying instead on vague references to the record and medically documented history. (*Id.* at 14). The ALJ found in her decision that, "[t]he record does not establish that the claimant had only marginal adjustment, that is, a minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life." (Tr. 19). She also noted progress notes from the medical record showing normal examination results and significant improvement. (*Id.*). González simply alleges that he meets the "Paragraph C" criteria with no further explanation, which leaves the Court no choice but to waive this claim as well. "It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *Zannino*, 895 F.2d at 17.

In sum, by failing to substantiate his arguments or grapple with the ALJ's reasoned and supported analysis, González waived his arguments. *Escobar v. Colvin*, No. 13-10186-JGD, 2014 WL 1159822, at *14, 2014 U.S. Dist. LEXIS 36751, at *43 (D. Mass. Mar. 20, 2014) ("[the plaintiff] has failed to explain how her conditions satisfy the requirements of a listed impairment or to point to any evidence supporting her position. Therefore, she has failed to establish that she is entitled to reversal or a remand on this basis"). In any event, the Court finds there is substantial evidence to support the ALJ's conclusion that González's impairments, considered singly and in combination, did not meet or medically equal the criteria of any listing. Therefore, absent any indication that the ALJ failed to apply the correct legal standard, González's first claim of error fails.

**B. Psychiatric Review Technique**

González's second claim of error stems from an allegation that the ALJ did not adhere to the PRT used to evaluate mental impairments when determining whether any of González's impairments met any of the Listings and when determining González's residual functioning capacity. (*See generally* ECF No. 14 at 14-21). This allegation finds no support in the record. The PRT is a technique used by the Social Security Agency to evaluate medically determinable impairments at Steps 2 and 3 of the sequential evaluation process. 20 C.F.R. § 404.1520a. After finding a claimant has a medically determinable mental impairment, 20 C.F.R. § 404.1520a(b)(1), the ALJs use the PRT to "rate the degree of functional limitation resulting from the impairment," 20 C.F.R. § 404.1520a(b)(2). The ALJs next rate the "Paragraph B" criteria discussed in detail in the Background section and then document the application of the PRT in the decision. *See id.* § 404.1520a(c)-(e). In this case, the ALJ followed these steps exactly.

As previously discussed, the ALJ followed the PRT in analyzing the four "Paragraph B" criteria in her decision. Throught the process, the ALJ cited evidence from González's medical record, including function reports, treatment records, and progress notes from González's psychologists, to support her findings of mild to moderate limitations. (Tr. 18-19). The ALJ's findings are consistent, if not more favorable for González's case, than the assessments of the state agency psychological consultants. (Tr. 529, 539). The ALJ then applied this analysis to support her decision that González's mental impairments, though severe, considered singly and in combination did not meet or medically equal the criteria of any listing. (Tr. 18-19). González's perfunctorily developed arguments fail to mention the detailed assessments made by the ALJ in arriving at her conclusions.[5] In short, González's arguments fall short of challenging the propriety of the ALJ's analysis and the evidence supporting her decision in this case.

The ALJ also, contrary to González's brief assertion, went on to determine González's RFC based on the previously mentioned "Paragraph B" assessments and adopted an RFC that is more

---

[5] González's brief also includes references to impairments he does not claim to have in any medical record or document included in the social security transcript, such as chronic fatigue syndrome and the cognitive effects of cancer recovery. (ECF No. 14 at 17). These references are entirely unrelated to the case and therefore any alleged error premised on those conditions is inapposite.

beneficial to González than that recommended by the state agency non-examining doctors. (Tr. 23). SSR 96-8p requires that the ALJ "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." SSR 96-8p, 1996 WL 374184 (July 2, 1996). González provides nothing that shows either an error of law or undermines the substantial record support for the ALJ's conclusions as to González's physical and mental limitations. In fact, González does not claim that there was not sufficient evidence in the file. (*See* ECF No. 14 at 21).

In the end, this Court finds the ALJ did not err in applying the law and there is substantial evidence in the record to support the ALJ's RFC determination. Therefore, González cannot succeed in his appeal. *See Rodríguez Pagán*, 819 F.2d at 3 (reiterating the principle that the Court must affirm the ALJ's decision so long as it is supported by substantial evidence); *Rhana W. v. Kijakazi*, No. 22-00004 (JDL), 2022 WL 17103514, at *2, 2022 U.S. Dist. LEXIS 211133, at *4 (D. Me. Nov. 22, 2022) ("That the ALJ did not ultimately draw the conclusions that the Plaintiff would have liked from her treatment records is not caused for remand.") (internal citations omitted).

## CONCLUSION

In light of the foregoing, I find that the decision of the ALJ is supported by substantial evidence and free of legal error. Therefore, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERED**.

In San Juan, Puerto Rico this November 3, 2025.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge
